[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 50 year old plaintiff wife and the 68 year old defendant husband met each other while they were each married to former spouses. As a result of the romance that developed, the defendant began an action to dissolve the marriage to his erstwhile spouse by the name of Edna and judgment was entered in that action on April 30, 1986, (Defendant's Exhibit #7). Six days later on May 6, 1986 at Bristol, Connecticut the parties intermarried. The CT Page 7008 evidence was not clear as to when the plaintiff had obtained her dissolution of marriage judgment but from that judgment she had obtained $20,000 in funds from the sale of a Waterbury house that she sold. She used $12,000 of that fund for purchase of a van to be able to transport her daughter who suffers from cerebral palsey. In order to satisfy the provisions of the judgment entered in the dissolution suit brought by the defendant, the parties arranged to refinance the defendant's real estate parcel located at 72 North Harwinton Avenue, Terryville, Town of Plymouth, Connecticut, at which time the defendant also conveyed an undivided one-half interest in the property to the plaintiff. This refinance enabled the defendant to pay $21,000 to his former spouse thereby satisfying the property division ordered in that judgment. This refinancing increased the mortgage on the property in Plymouth from $34,000 to $54,000 and increased the monthly obligation from approximately $400 to a bi-weekly mortgage obligation together with a tax escrow, creating a total monthly obligation of mortgage principal, interest and taxes of approximately $672.
The plaintiff moved in with the defendant immediately after the marriage, bringing with her five rooms of furniture and an ambitious design to redo and improve the defendant's home. She proceeded to install wall-to-wall carpeting throughout the house, painted and wallpapered the inside, painted the outside of the house, hired a contractor to install four thermalpane windows, and hired a landscaper to haul away seven old cars from the rear yard and to cut and trim the grass. Much of the defendant's old furniture was discarded.
The plaintiff was solely in charge of the household budget and handled the money. The defendant turned his income from his job over to the plaintiff. The plaintiff's income was derived from social security benefits received on behalf of the child and as custodial parent, as well as work that she performed as a masseuse, earning between $3,000 and $8,000 annually between 1986 and 1990. The defendant had earned $18,000 gross wages in 1987 and testified to receiving $600 weekly net income in 1988 and 1989 until he retired in that latter year. He now receives social security retirement in the amount of $158.00 weekly as well as a check from the British government in the amount of $37.00 weekly since he enjoys dual citizenship in both the UK and the USA.
The parties separated in January, 1991 when the plaintiff moved from the premises, taking with her the five rooms of furniture as well as any addition that she made to the tangible contents during the four years of marriage, claiming that these items were purchased with her separate money. The defendant testified that the house appeared to have been burgled after the plaintiff left since very little was left on the premises. This CT Page 7009 action was commenced in March, 1991. The real estate was listed for sale in April, 1991 and in the ensuing 15 months there has been one offer under $100,000 by people who could not obtain a mortgage. Both parties concede that the real estate must be sold as part of settlement of their financial affairs and division of assets.
The defendant suffered a heart attack on May 29, 1992 and on July 4, 1992 a quadruple bypass operation was performed. He also was hospitalized for one week recently for a prostate problem. His prospects for working in the future appear dim. The plaintiff made no complaints about the state of her health.
The parties made three trips to England during the marriage and the plaintiff has a $5,600 balance remaining on her Master Card account as a result of payments made to underwrite the trips. The plaintiff also testified to paying off a note that was incurred by the defendant at the time of the purchase of his house in 1978 but the plaintiff never stated an amount that she paid and whether it was paid from joint funds or from her separate account. The court lends no weight to this testimony regarding this downpayment note.
The court is unable to apportion fault for the breakdown of this marriage in an unequal manner and draws the conclusion that both parties have to bear the responsibility equally. The court also concludes that the plaintiff's efforts in working on the interior and exterior of the house have added value to the property in an unknown amount but certainly the property is in better condition than when she married the defendant. The defendant has conceded the same.
Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment:
1. A decree is entered on the complaint dissolving the marriage of these parties on the ground of irretrievable breakdown.
2. The real estate is ordered sold by private sale and if the present listing with a Waterbury broker does not result in a sale by the expiration of the current listing, the parties are ordered to select a broker who is a member of the greater Bristol multiple listing service and to list the property for sale at the broker's recommended price immediately for a term of not less than three months and not greater than six months. During the listing, either party may apply to the court for an order regarding the asking price until the real estate is sold. The defendant is awarded exclusive possession of the premises and he is ordered to pay the mortgage payments as they fall due. Upon sale, the net CT Page 7010 proceeds shall be divided by paying the plaintiff the sum of $8,000 which represents her initial investment in the real estate being the amount of money she brought from her former house and by paying her an additional sum of $5,600 to enable her to pay off her MasterCard balance which was incurred due to the England trips. In addition, she shall be paid the sum of $2,000 to enable her to defray legal expenses. Any balance remaining shall then be paid to the defendant.
3. Each party shall otherwise retain the assets they now possess.
4. Each party shall otherwise pay the bills that they presently list on their financial affidavits.
5. The plaintiff's maiden name of Gransky is ordered restored to her.
Counsel for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.
ORDER
Sua sponte the courts orders the correction of the spelling of the plaintiff's first name throughout this file to "Arline".
HARRIGAN, J.